# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

**SHAYLA H.[1]**,

               Plaintiff,

      v.

**MARTIN O'MALLEY**, Commissioner of Social Security,

               Defendant.

Case No. 2:22-cv-1377-SI

**OPINION AND ORDER**

Katherine L. Eitenmiller and Brent Wells, WELLS, MANNING, EITENMILLER & TAYLOR, PC, 474 Willamette Street, Eugene, OR 97401 Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Gabriel Bono, Special Assistant United States Attorney, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Plaintiff Shayla H. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for supplemental security income (SSI). As explained below, the Court affirms the Commissioner's decision.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

## STANDARD OF REVIEW

The decision of the administrative law judge (ALJ) is the final decision of the Commissioner in this case. The district court must affirm the ALJ's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the ALJ's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the ALJ. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the ALJ on a ground upon which the ALJ did not rely. *Id.*; *see also Bray*, 554 F.3d at 1225.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff previously filed an application for SSI on August 23, 2012. Plaintiff's application was denied and ALJ M.J. Adams issued an unfavorable decision on January 12, 2017. AR 318-33. Plaintiff again applied for SSI on May 14, 2019, alleging a disability onset

date of May 9, 2019.[2] AR 453. Plaintiff's date of birth is June 21, 1984. *Id*. She was 34 years old as of the alleged disability onset date. AR 340. The agency denied Plaintiff's claims both initially and upon reconsideration, and Plaintiff requested a hearing. AR 354, 375, 389. Plaintiff appeared before ALJ MaryAnn Lunderman for a hearing on February 22, 2021. AR 246. The ALJ issued a decision denying Plaintiff's claim for benefits. AR 222-40. Plaintiff requested a review of the ALJ's decision, which the Appeals Council denied. AR 1-6. The ALJ's decision thus became the final decision of the Commissioner and Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g).

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

---

[2] Plaintiff's application in the record is dated May 14, 2019. The administrative determinations, however, including the ALJ's opinion, all reference her application as dated May 10, 2019. *See ,e.g.*, AR 223, 339. This discrepancy is immaterial for purposes of this Opinion and Order.

*Keyser*, 648 F.3d at 724-25. Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4). If the analysis continues beyond step three, the ALJ must evaluate medical and

other relevant evidence to assess and determine the claimant's "residual functional capacity"

(RFC).

      The claimant bears the burden of proof at steps one through four. *Bustamante v.*

*Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098

(9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d

at 1100. At step five, the Commissioner must show that the claimant can perform other work that

exists in significant numbers in the national economy, "taking into consideration the claimant's

residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R.

§§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the

Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform

other work existing in significant numbers in the national economy, the claimant is not disabled.

*Tackett*, 180 F.3d at 1099; *see Bustamante*, 262 F.3d at 954.

## C.  The ALJ's Decision

      The ALJ first determined that Plaintiff's condition had worsened and thus rebutted the

presumption of non-disability from the previous determination by ALJ Adams. AR 222. The

ALJ then proceeded to the sequential analysis. At step one, the ALJ found that Plaintiff had not

engaged in substantial gainful activity since the date of Plaintiff's application. AR 225. At step

two, the ALJ found that Plaintiff had the following severe impairments: schizophrenia/psychotic

disorder, major depressive disorder, generalized anxiety disorder, posttraumatic stress disorder

(PTSD), marijuana use disorder, lumbar spondylosis with radiculopathy, cervical degenerative

disc disease, right knee degenerative joint disease, fibromyalgia, migraine headaches, obesity,

and chronic obstructive pulmonary disease. *Id*. At step three, the ALJ determined that none of the impairments, either individually or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 226.

The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform light work as defined in 20 C.F.R. § 416.967(b) except she can only occasionally climb ladders, ropes, or scaffolds, and frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. AR 229. Furthermore, the ALJ found that Plaintiff can only have less than occasional exposure to unprotected heights, workplace hazards, fluorescent or similar bright light, and pulmonary irritants. *Id*. Plaintiff was further limited to simple unskilled tasks with an Specific Vocational Preparation and Reasoning Level of 1 or 2, with minimal changes in the assigned tasks and that tasks must be learned in thirty days or less or by a brief demonstration. *Id*. The tasks must require no more than occasional, brief, intermittent work-related contact with coworkers, supervisors, and the public. *Id*. Finally, Plaintiff must be allowed to wear sunglasses and headphones while working with no direct exposure to bright lighting, such as fluorescent lighting, in the assigned workspace. AR 229-30. At step five, relying on testimony of a vocational expert (VE), and considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy, including Routing Clerk (104,000 jobs in the national economy), Production Assembler (59,300 jobs in the national economy, reduced by 15-20 percent based on Plaintiff's RFC), and Marker (129,000 jobs in the national economy). AR 239. The ALJ thus concluded that Plaintiff was not disabled. AR 240.

## DISCUSSION

Plaintiff argues that the ALJ erred by (A) improperly discounting Plaintiff's subjective symptom testimony, (B) improperly rejecting medical opinion evidence from Plaintiff's

treatment providers, Dr. Ashley Anderson, D.O., and Sean Becker, MSW, QMHP (Becker), and (C) improperly rejecting the lay witness testimony of Plaintiff's mother. The Court addresses each argument in turn.

## A. Plaintiff's Subjective Symptom Testimony

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[3] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not

---

[3] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing

*Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's

character," and requires the ALJ to consider all of the evidence in an individual's record when

evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016

WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case

record, including the objective medical evidence; an individual's statements about the intensity,

persistence, and limiting effects of symptoms; statements and other information provided by

medical sources and other persons; and any other relevant evidence in the individual's case

record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's

statements made to the Commissioner, medical providers, and others regarding the claimant's

location, frequency and duration of symptoms, the impact of the symptoms on daily living

activities, factors that precipitate and aggravate symptoms, medications and treatments used, and

other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical

reports regarding the claimant's history, treatment, responses to treatment, prior work record,

efforts to work, daily activities, and other information concerning the intensity, persistence, and

limiting effects of an individual's symptoms; and (3) non-medical source statements, considering

how consistent those statements are with the claimant's statements about his or her symptoms

and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall

even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See*

*Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

In making his finding, the ALJ offered the boiler plate statement that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 232. The ALJ then explained that she discounted Plaintiff's testimony because her treatment has been routine and conservative and the objective medical evidence does not support her alleged limitations.

### 1.  Specificity

As an initial matter, Plaintiff argues that the ALJ simply recited Plaintiff's medical record and did not identify what testimony was found not credible and why, and thus the ALJ's opinion is not sufficiently specific. An ALJ must specifically identify what evidence contradicted what testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (stating that an ALJ may not vaguely conclude that "a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion" (quoting *Vasquez*, 572 F.3d at 592). A court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [a clamaint's] pain testimony where . . . the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (emphases in original) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual

functional capacity determination" but must "specify which testimony she finds not credible," and the district court may not "comb the administrative record to find specific conflicts." *Brown-Hunter*, 806 F.3d at 489, 494 (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)); *see also Lambert*, 980 F.3d at 1278 (stating that "provid[ing] a relatively detailed overview of [a claimant's] medical history . . . 'is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.'" (emphasis in original) (quoting *Brown-Hunter*, 806 F.3d at 494)). Instead, the ALJ must "identify the testimony she found not credible" and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to do so is legal error. *Id.*

Plaintiff's alleged disability is based on a combination of alleged pain and debilitating mental health symptoms. The ALJ included specific statements Plaintiff made to providers regarding her alleged pain, and then discussed the medical records that the ALJ found did not support those statements. For example, the ALJ noted that while Plaintiff stated she goes weeks without getting out of bed due to pain, and the ALJ discussed treatment records that did not support that statement. AR 231-34. The ALJ also stated that Plaintiff complained of back pain, and the ALJ then discussed treatment records that did not support that complaint. AR 232-33. Likewise, regarding Plaintiff's mental health symptoms, the ALJ highlighted Plaintiff's complaints of problems concentrating and severe anxiety, then discussed treatment records that did not support those complaints. AR 234-36. The ALJ did not err for lack of specificity.

### 2. Conservative Treatment

Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533

F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

The Commissioner argues that the ALJ properly considered Plaintiff's treatment history. Plaintiff argues only that the ALJ's recitation of the medical evidence and focus on the lack of support in the objective medical evidence is erroneous. In evaluating Plaintiff's subjective symptom testimony, however, the ALJ also specifically stated that Plaintiff's treatment for her "physical conditions has largely been routine and conservative," AR 232, and that she "continued to receive conservative treatment for complaints of pain." AR 233. In evaluating the medical evidence, the ALJ concluded that the opinions of the state agency medical doctors were consistent with Plaintiff's "treatment records that show conservative treatment for the conditions." AR 237. Thus, the ALJ repeatedly stated that Plaintiff's conservative treatment was a factor in the ALJ's analyses.

Plaintiff has had treatment for her physical symptoms such as physical therapy and nonnarcotic pain medication. These are considered conservative treatments. *See Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) (stating that physical therapy and ongoing pain medication is conservative treatment); *see Tommasetti*, 533 F.3d at 1040 (describing physical therapy, anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset as conservative treatment). The ALJ thus did not err in considering Plaintiff's conservative treatment to discount her testimony.

### 3.  Lack of Support in Medical Records

An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Robbins*, 466 F.3d at 883; 20 C.F.R. § 416.929(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

At the hearing, Plaintiff testified that she cannot sustain full-time employment because she can only concentrate for very short amounts of time, gets easily overwhelmed, has severe anxiety, can only sit or stand for 15 minutes, cannot lift more than 12-to-15 pounds, experiences back pain and migraines, does not interact with others when having headaches due to increased anxiety, and experiences drowsiness, fatigue, dizziness, and lightheadedness due to medication. AR 257-61, 265. Plaintiff also testified that she exercises by walking up and down the 13 stairs in her house, that bright lights exacerbate her migraines, that she watches videos on Tik Tok, that she scrolls through Facebook, that she is not engaged in any hobbies, does not garden or do yardwork, has her father take her to the laundromat so she can do laundry, and does not cook. AR 262-64. Plaintiff continued, stating that she "constantly" suffers from auditory hallucinations, does not leave the house alone, experiences anxiety attacks that are easily

triggered, feels as though she is being watched everywhere she goes, and does not have friends. AR 269-71.

In her function report, Plaintiff stated she could not sit or stand for long periods of time, suffers from some level of PTSD, could not concentrate or focus, experiences debilitating migraines that will leave her bedridden for 12-24 hours, has a high level of anxiety with accompanying panic attacks, and that her schizoaffective disorder causes her to experience audio and visual hallucinations, as well as paranoia. AR 492. She also endorsed needing her mom's help taking care of her son and three dogs, that her pain affects her sleep and ability to care for herself and son, that she can only make simple meals, that she does some chores when she is able, that she does not go out alone, and that she does not handle any level of stress well. AR 493-98.

The ALJ evaluated Plaintiff's testimony by dividing her "physical conditions" and "physical impairments," AR 232-34, from her "mental limitations." AR 234. When the ALJ divides testimony into separate parts, the ALJ may not discount one part as unsupported by the objective medical evidence and then discount the entire testimony on that basis. *See Dale v. Colvin*, 823 F.3d 941, 945-46 (9th Cir. 2016); Thus, both Plaintiff's physical and mental limitations must be unsupported by the medical record for this factor to be relevant in discounting each of those aspects of Plaintiff's testimony.

The ALJ described various objective medical records that he found did not support Plaintiff's physical symptoms. The ALJ noted that despite Plaintiff's complaints of pain and reports of being able to lift between 10-15 pounds, she exhibited normal range of motion, full strength in extremities, normal lung function, normal gait, presented in no acute distress at appointments despite asserting pain levels at 8/10 or 9/10, and had only mild or normal findings

on MRIs, x-rays, and exams. AR 232-34 (citing AR 1496, 1498, 17332, 2146-47, 2159, 2225, 2226). The ALJ further noted that Plaintiff had only mild spondylolisthesis, minimal nerve compression, migraine without aura that was not intractable, lumbar spondylosis with radiculopathy, mild grade one anterolisthesis of L5-S1, mild right-sided foraminal stenosis at L5-S1, and chronic midline lower back pain with left sided sciatica. AR 232-33 (citing AR 1732, 2041, 2045, 2159, 2215, 2226).

The ALJ does not explain how Plaintiff's complaints of pain in her back are undermined by her normal gait, normal range of motion, full strength in her extremities, and lack of acute distress. This is particularly so given both Plaintiff's diagnosis of fibromyalgia as well as the abnormal findings on exams listed above occurring from 2019 to 2021. As noted by the Ninth Circuit, those suffering from fibromyalgia have "muscle strength, sensory functions, and reflexes that are normal." *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (cleaned up). The ALJ, however, could consider the mild findings from Plaintiff's imaging as a relevant factor in discounting Plaintiff's testimony regarding her back pain. *See Burch*, 400 F.3d at 681.

Regarding Plaintiff's mental health symptom testimony, the ALJ found that despite Plaintiff's complaints of PTSD, inability to concentrate and focus, depression, severe anxiety, audio and visual hallucinations, panic attacks, and paranoia, she exhibited grossly normal findings when tested, denied psychoses, sometimes denied experiencing hallucinations, denied experiencing side effects from medication, indicated at least some of her depression was situational, and endorsed getting better on medication when taken consistently. AR 234-36 (citing, e.g., AR 1555, 1816, 1833, 2074, 2086, 2108, 2128, 2171, 2142, 2147, 2157, 2159, 2204, 2223, 2259). These records do not support Plaintiff's alleged limitations and are a relevant

consideration. Thus, the objective medical evidence is a further clear and convincing reason, supported by substantial evidence, for the ALJ to discount Plaintiff's testimony.

## B. Medical Opinion Evidence

Plaintiff filed her application for benefits on May 10, 2019. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. § 416.920c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 416.920c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinion. 20 C.F.R. § 416.920c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. 20 C.F.R. § 416.920c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking to factors such as the length of the treatment relationship, the frequency of the claimant's examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether there is an examining relationship. *Id.* § 416.920c(c)(3). An ALJ is not, however, required to explain how he or she considered these secondary medical factors, unless he or she

finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 416.920c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. § 416.920c(b). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, 32 F.4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible with the revised regulations. . . . Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." (citation omitted)).

### 1. Dr. Ashley Hoeck Anderson, D.O.

Between December 10, 2020 and February 25, 2021, Dr. Anderson treated Plaintiff on four occasions.[4] AR 208-12 (February 25, 2021), 2170-73 (December 31, 2020), 2180-87 (December 10, 2020), 2258-61 (January 28, 2021). On February 25, 2021, Dr. Anderson provided a mental health residual functional capacity assessment on Plaintiff's behalf. AR 2240-45.

In her statement, Dr. Anderson opined that because of Plaintiff's schizoaffective disorder, PTSD, insomnia, extrapyramidal syndrome, GAF score, tardive dyskinesia, and medication side effects, Plaintiff would require additional unscheduled breaks during an eight-hour workday.

---

[4] Dr. Anderson continued treating Plaintiff after February 2021, but for purposes of the ALJ's evaluation of Dr. Anderson's written opinion, only her treatment before February 25, 2021 is relevant.

AR 2240, 2244. She also stated Plaintiff would miss more than four days of work per month and experienced three episodes of decompensation within twelve months with each lasting for at least two weeks. AR 2245. She further noted that Plaintiff had marked limitations in her ability to understand and remember detailed instructions, ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, ability to sustain ordinary routine without special supervision, ability to work with others without being distracted by them, ability to respond appropriately to changes in the work setting, ability to travel to unfamiliar places or use public transportation, ability to tolerate normal levels of stress, ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. AR 2243-44. She further found that Plaintiff had extreme limitations in her ability to complete a normal workday and work week without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. AR 2243. The ALJ concluded that Dr. Anderson's opinion was not fully persuasive because there was no indication that she reviewed the longitudinal record to form a comprehensive opinion of Plaintiff's functioning, the limitations appeared primarily based on Plaintiff's self-report, the limitations were  inconsistent with Dr. Anderson's own treatment notes and Plaintiff's reports of improvement while being treated by Dr. Anderson, and the limitations were inconsistent with the normal examination findings throughout the record and the evidence as a whole. AR 237-38.

An ALJ may discount a medical source opinion if it is not supported by her treatment notes. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (stating that an ALJ may discount medical opinions that are "inadequately supported by clinical findings" (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002))); 20 C.F.R. § 404.1520c(c)(1) (explaining that the

"supportability" factor considers "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s)"). Dr. Anderson's records do not contain clinical findings sufficient to support the severe limitations contained in her psychological assessment. At Plaintiff's first visit with Dr. Anderson she reported a history of improvement with medication, but that it had stopped being as beneficial. AR 2181. In her next visit, after three weeks with no treatment, she reported added stress due to the holidays but no worsening in her condition. AR 2170. In her third visit, Plaintiff reported improvement from the medication changes prescribed by Dr. Anderson. AR 2259. In her final visit, on February 25, 2021, after four weeks without treatment and when she reported increased stress, Plaintiff reported increased symptoms. AR 209. She also reported difficulties with her medication and requested a change in medication. Even during this visit reporting increased difficulties, Dr. Anderson's mental status exam and other findings do not support such severe restrictions.

An ALJ also may reject medical source opinion evidence that is inconsistent with other medical opinions of record, or inconsistent with the objective medical evidence. *See Tommasetti*, 533 F.3d at 1041 (concluding that the ALJ did not err in rejecting medical opinion that was inconsistent with objective medical evidence and another medical opinion of record); 20 C.F.R. § 404.1520c(c)(2) (explaining that the "consistency" prong evaluates how consistent an opinion "is with the evidence from other medical sources"). Plaintiff's other medical records show that while she has never been specifically tested with regard to her cognition, her exams show that she scored 30/30 on a mini mental status exam, and had mostly normal findings regarding her memory, cognition, insight and judgment, and with minimal, if at all, inability to concentrate. AR 1833, 2074, 2086, 2102, 2121, 2128, 2171. Other records show that she consistently walks one to two miles in the community, demonstrated an ability to care for her

friends and meet romantic partners, and showed improvement in her symptoms, which is inconsistent with Dr. Anderson's opinion. AR 1839, 1841, 1857, 2086, 2168, 2174, 2201.

Plaintiff cites other evidence in the record that she argues supports Dr. Anderson's limitations. The ALJ's interpretation is a rational reading of the record, however, and thus must be upheld. *See Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

The ALJ also discounted Dr. Anderson's opinion because she had treated Plaintiff for only a limited duration and did not have a longitudinal view of Plaintiff's limitations. This is a relevant factor an ALJ may consider. 20 C.F.R. § 404.1520c(c)(3)(i). The ALJ thus considered Dr. Anderson to have improperly relied on Plaintiff's subjective self-reports. "If a treating provider's opinions are based to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (quotation marks omitted). "Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Plaintiff argues that *Buck* applies. Dr. Anderson, however, provided medical management for Plaintiff and did not perform the objective psychiatric tests and other objective measures of the type on which to base significant psychiatric limitations. Dr. Anderson's longitudinal understanding of Plaintiff's functioning and reliance on Plaintiff's subjective reporting are additional valid reasons provided by the ALJ to discount Dr. Anderson's opinion.

## 2. Sean Becker, MSW, QMHP

Between December 14, 2020 and February 23, 2021, Becker treated Plaintiff six times. AR 213-18 (February 17 and 22, 2021); 2167-68 (January 6, 2021); 2173-79 (December 14, 23, and 30, 2020).[5] On February 26, 2021, Becker provided a mental health residual functional capacity assessment of Plaintiff. AR 2282-86.[6] His assessment mirrored much of Dr. Anderson's while also noting Plaintiff had no limitations in her understanding and memory and that she had good memory skills. AR 2284-85. In addition to noting marked and extreme limitations in many of the same categories as Dr. Anderson, Becker also noted marked and extreme limitations in ability to maintain attention and concentration for extended periods, ability to make simple work-related decisions, ability to accept instructions and respond appropriately to criticism from supervisors, and ability to set realistic goals or make plans independently of others. AR 2284-85. Becker further noted that Plaintiff had a current history of one or more years' inability to function outside a highly supported living arrangement with an indication of continued need for such an arrangement. AR 2286. The ALJ found Becker's opinion unpersuasive for the same reasons as Dr. Anderson's, notably that it was based on Plaintiff's self-reports and inconsistent with his own treatment records as well as other medical records. AR 238. The ALJ also found that Becker is not an acceptable medical source. *Id*.

---

[5] Becker continued treating Plaintiff after February 2021, but for purposes of evaluating the ALJ's assessment of Becker's medical source opinion, the Court considers his treatment before February 23, 2021.

[6] The first page of Becker's assessment appears to be missing from the record. The exhibit contains Plaintiff's signed release and then pages two to six of Becker's assessment. A comparison to the same form provided by Dr. Anderson shows that the first page is not included.

The ALJ erred in rejecting Becker's opinion because he was not an "acceptable medical source." Becker is a "medical source," 20 C.F.R. § 416.902(i), and as such may offer a medical opinion. *Id.* § 416.913(a)(2).

The other reasons given by the ALJ, however, are sound. An independent review of the record supports the ALJ's holding that Becker's opinion is unsupported by his own treatment records, as well as other medical record evidence. Becker's treatment notes are sparse, and do not reflect the marked and extreme limitations assessed. His sessions with Plaintiff focus on her relationship with her mother, but there are no notes that would reasonably lead to the extreme assessment given. Likewise, Becker does not explain what he believes to be a supportive living arrangement and his therapy notes do not suggest that Plaintiff is in need of one. Becker's treatment notes are also inconsistent with the other medical evidence of record and impermissibly reliant on Plaintiff's self-reports for the same reasons as Dr. Anderson's above. Therefore, the ALJ did not err in finding Becker's opinion unpersuasive.

## C.  Lay Witness Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment and "must give reasons that are germane to each witness." *Id.* (quoting *Dodrill*, 12 F.3d at 919). In rejecting lay testimony, however, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Such an error may be harmless, and a court must determine whether the error is "'inconsequential to the ultimate nondisability determination' in the context of the record as a whole." *Id.* at 1122 (quoting *Carmickle*, 533 F.3d at 1162-63). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117.

The Commissioner argues that under new regulations governing the evaluation of *medical* evidence, an ALJ need not provide any reason for rejecting *lay* witness statements. Subsection (d) of the new reshowgulations provides: "We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section." 20 C.F.R. § 416.920c(d). Subsections (a) through (c) lay out the new standards for evaluating medical opinion evidence. *Id.* § 416.920c(a)-(c). Thus, under the new regulations, the ALJ is not required to use the standards for evaluating medical opinion evidence when evaluating lay witness testimony.

The Ninth Circuit has not yet decided whether the new regulations affect the requirement in the Ninth Circuit that an ALJ must give germane reasons for rejecting lay witness testimony. Some courts have concluded that the new regulations may dispense with an ALJ's obligation specifically to address lay witness testimony, including any obligation to articulate germane reasons for disregarding lay testimony. *See, e.g.*, *Evans v. Comm'r of Soc. Sec.*, 2023 WL 3570083, at *9 (E.D. Cal. May 19, 2023) ("Under the new regulations regarding nonmedical statements, the Commissioner is no longer required to articulate 'germane' reasons for

discounting a lay witness's testimony."). The majority of district courts in this circuit, however, conclude that the new regulations have not eliminated an ALJ's obligation to consider and address lay witness testimony. *See, e.g.*, *Christopher M. v. Comm'r, Soc. Sec. Admin.*, 2023 WL 8827678, at *10 (D. Or. Dec. 21, 2023); *Jerald H. v. Comm'r of Soc. Sec.*, 2023 WL 6533477, at *4 (W.D. Wash. Oct. 6, 2023); *Gardner v. Comm'r of Soc. Sec. Admin.*, 2023 WL 6173220, at *6 (D. Ariz. Sept. 21, 2023); *Joseph L. S. v. Kijakazi*, 2023 WL 5611408, at *5 (C.D. Cal. Aug. 30, 2023); *Sharon W. v. Kijakazi*, 2023 WL 246391, at *8 (D. Idaho Jan. 18, 2023).

On the Court's reading, the new regulations do not eliminate an ALJ's obligation to consider and address lay witness testimony. The revised regulations describe how to evaluate *medical* opinion testimony. The fact that the regulations state that nonmedical opinion testimony *is not held* to the same standard as medical opinion testimony says nothing about the standard to which nonmedical opinion testimony *is held*. Thus, the new regulations are not "clearly irreconcilable" with existing caselaw and are insufficient to overrule binding Ninth Circuit precedent that an ALJ must comment on lay witness testimony and provide germane reasons to discount it. *See Woods*, 32 F.4th at 790 ("[Ninth Circuit] precedent controls unless its reasoning or theory is clearly irreconcilable with the reasoning or theory of intervening higher authority, which in this case is the agency's updated regulations." (cleaned up)). Further, "[t]he requirement that an ALJ consider lay witness testimony comes from other regulations, regulations that remain intact after the 2017 amendment." *Joseph L.S.*, 2023 WL 5611408, at *5. (citing 20 C.F.R. §§ 416.913(a), 416.929(a)). The Ninth Circuit's requirement from the line of cases described above that an ALJ must provide germane reasons to discount lay witness testimony finds support in this regulatory requirement, which still remains. *See, e.g.*, *Dodrill*, 12

F.3d at 918-19 ("Disregard of [lay witness testimony] violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work. 20 C.F.R. § 404.1513(e)(2)."[7] (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). Thus, the contention "[t]hat an ALJ can disregard or reject relevant lay evidence for no reason is inconsistent with the Commissioner's obligation to consider such evidence[] and the rule [that] the ALJ must provide some rationale in order for the Court to meaningfully determine whether the ALJ's conclusions are free of legal error and supported by substantial evidence." *Gary J.D. v. Comm'r of Soc. Sec.*, 2023 WL 5346621, at *14 (W.D. Wash. Aug. 21, 2023).

Plaintiff's mother provided a third party function report in which she echoed Plaintiff's own report, stating that Plaintiff has difficulties caring for her son without help, suffers from chronic pain, anxiety, migraines, hallucinations, lack of sleep, can only sit or stand for short lengths of time, has to set reminders for medication and medical appointments, can only make simple meals, helps with laundry but not with most household chores, does not have interact socially, and does not go out alone. AR 517-20. She also states that Plaintiff does not handle stress, cannot interact with authority figures, and cannot handle changes in her routine. AR 521-22. Plaintiff argues that the ALJ erred by neither accepting nor rejecting the lay witness testimony as represented in the third-party function report.

Plaintiff is correct in that the ALJ erred by neither accepting nor rejecting the lay witness testimony without comment. This error was harmless, however, because the testimony "does not describe any limitations not already described by the claimant, and the ALJ's well-supported

---

[7] The requirement that the Commissioner consider nonmedical evidence in adjudicating Title II claims is now in 20 C.F.R. § 404.1513(a)(4).

reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony."

*See Molina*, 674 F.3d at 1117.

## CONCLUSION

The Court AFFIRMS the Commissioner's decision that Plaintiff was not disabled.

**IT IS SO ORDERED**.

DATED this 18th day of March, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge